UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARK HUFFMAN,                          :
        Plaintiff,                     :
                                       :
     v.                                :      CA 08-392 ML
                                       :
MICHAEL J. ASTRUE,                     :
COMMISSIONER OF                        :
SOCIAL SECURITY,                       :
        Defendant.                     :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

     This matter is before the Court on the request of Plaintiff
Mark Huffman ("Plaintiff") for judicial review of the decision of
the Commissioner of Social Security ("the Commissioner"), denying
disability insurance benefits ("DIB") and Supplemental Security
Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social
Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3)
("the Act").  Plaintiff has filed a motion to reverse the
decision of the Commissioner.  See Plaintiff's Motion to Reverse
without or, Alternatively, with a Remand for a Rehearing the
Commissioner's Final Decision (Document ("Doc.") #9) ("Motion to
Reverse").  Defendant Michael J. Astrue ("Defendant") has filed a
motion for an order affirming the decision of the Commissioner.
See Defendant's Motion for an Order Affirming the Decision of the
Commissioner (Doc. #10) ("Motion to Affirm").

     This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  For the reasons set forth herein, I find that the
Commissioner's determination that Plaintiff is not disabled is
not supported by substantial evidence in the record.
Accordingly, based on the following analysis, I recommend that

Plaintiff's Motion to Reverse be granted to the extent that the matter be referred for further administrative proceedings and that Defendant's Motion to Affirm be denied.

## Facts and Travel

Plaintiff was born in 1964.  (Record ("R.") at 15, 50, 580-86)  He completed two years of college and has past relevant work as a senior computer hardware technician.  (R. at 15, 76, 80)

Plaintiff filed applications for DIB and SSI on January 4, 2005,[1] (R. at 15, 50-52, 580-86), alleging disability since January 15, 2001, due to a "bad back," (R. at 15, 75).  The applications were denied initially, (R. at 14, 28, 30-32), and on reconsideration, (R. at 14, 29, 36-38, 39-41), and Plaintiff requested a hearing before an administrative law judge ("ALJ"), (R. at 42).  A hearing was held on January 19, 2007, at which Plaintiff, represented by counsel, appeared and testified, as did an impartial medical expert, John R. Ruggiano, M.D. (the "ME"), and an impartial vocational expert, Carl E. Barchi (the "VE").  (R. at 14, 592-634)  On February 2, 2007, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (R. at 14-21)  Plaintiff requested review by the Appeals Council, (R. at 10), which on August 19, 2008, denied his request, (R. at 6-8), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 6).  Plaintiff thereafter filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the

---

[1] Plaintiff filed prior applications for DIB and SSI on October 30, 1987, which were denied at the initial level on December 15, 1987. (R. at 15)  It appears that no request for reconsideration was filed. (Id.)

2

record and is free of legal error.

## Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

(1971))).

## Law

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4]  20 C.F.R. §§ 404.1521(a), 416.921(a)

---

[3] The ALJ found that "[t]he claimant met the disability insured status requirements of Title II of the Act on January 15, 2001, the date the claimant stated he became unable to work, and continues to meet them through December 31, 2006."  (R. at 20)

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2009).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

(2009).[5]  A claimant's complaints alone cannot provide a basis
for entitlement when they are not supported by medical evidence.
See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21
(1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2009).

The Social Security regulations prescribe a five step
inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2009); see also Bowen v. Yuckert,
482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that
scheme, the Commissioner must determine sequentially: (1) whether
the claimant is presently engaged in substantial gainful work
activity; (2) whether he has a severe impairment; (3) whether his
impairment meets or equals one of the Commissioner's listed
impairments; (4) whether he is able to perform his past relevant
work; and (5) whether he remains capable of performing any work
within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The
evaluation may be terminated at any step.  See Seavey v.
Barnhart, 276 F.3d at 4.  "The applicant has the burden of
production and proof at the first four steps of the process.  If
the applicant has met her burden at the first four steps, the
Commissioner then has the burden at Step 5 of coming forward with
evidence of specific jobs in the national economy that the
applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606,
608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the

---

Id.

[5] The Social Security Administration ("SSA") has promulgated
identical sets of regulations governing eligibility for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").
See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120
n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite
only to one set of regulations.  See id.

instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since the alleged onset
of his disability, (R. at 15, 20); that Plaintiff's lumbar
degenerative disc disease constituted a severe impairment, but
his right eye astigmatism, status post multiple stab wounds, left
elbow fracture, mandible fracture, depression, panic disorder,
anxiety disorder, and substance addiction disorder did not, (R.
at 15, 16 n.2, 20); that Plaintiff did not have an impairment or
combination of impairments which met or medically equaled one of
the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix
1, (R. at 16, 20); that the severity of pain and symptoms and
degree of incapacity alleged by Plaintiff was exaggerated and not
credible, (R. at 19, 20); that Plaintiff retained the residual
functional capacity ("RFC") to perform a full range of work at
the medium exertional level; that Plaintiff's impairment did not
prevent him from performing his past relevant work as a senior
computer hardware technician; and that Plaintiff was not disabled
as defined in the Act and, therefore, was not entitled to a
period of disability or DIB, (R. at 20, 21), or to SSI, (R. at
21).

## Errors Claimed

Plaintiff alleges that: (1) the ALJ's physical RFC
determination is not supported by substantial evidence; (2) the
ALJ's finding that Plaintiff had no nonexertional limitations is
not supported by substantial evidence; (3) the ALJ's finding of
narcotic addiction is not supported by substantial evidence; and
(4) the ALJ failed to comply with Social Security Ruling ("SSR")
00-4p.

## Discussion

## I.  The ALJ's physical RFC finding is not supported by substantial evidence.

The ALJ found that Plaintiff retained the RFC to perform a

full range of medium work.[6] (R. at 19, 20) In reaching this
conclusion, the ALJ afforded little or no probative weight to the
opinions of the state Disability Determination Services ("DDS")
consultants, who found that Plaintiff was capable of performing
work at the light exertional level[7] with some postural and
environmental restrictions.[8] (R. at 19 n.5) The ALJ reasoned
that the DDS doctors "did not consider the testimony of the
medical expert at the hearing. It is obvious that the opinions
of non-examining physicians are entitled to only limited weight
under the Regulations." (Id.)(internal citations omitted).

　　Plaintiff challenges the ALJ's RFC finding, arguing that it
is not supported by substantial evidence. See Plaintiff's
Memorandum in Support of Plaintiff's Motion to Reverse without a
Remand for a Rehearing or, Alternatively, with a Remand for a

---

[6] Medium work "involves lifting no more than 50 pounds at a time
with frequent lifting or carrying of objects weighing up to 25
pounds." 20 C.F.R. § 404.1567(c) (2009).

[7] Light work

　　involves lifting no more than 20 pounds at a time with
　　frequent lifting or carrying of objects weighing up to 10
　　pounds. Even though the weight lifted may be very little, a
　　job is in this category when it requires a good deal of
　　walking or standing, or when it involves sitting most of the
　　time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

[8] Specifically, at the initial level Edward R. Hanna, M.D., found
that Plaintiff could: occasionally lift and/or carry up to twenty
pounds; frequently lift and/or carry up to ten pounds; stand and/or
walk (with normal breaks) for about six hours in an eight-hour
workday; sit for about six hours in an eight-hour workday; push and/or
pull (including operation of hand and/or foot controls) with no
limitations; frequently balance, kneel, crouch, and/or crawl; and
occasionally climb ramps, stairs, ropes, and/or scaffold, balance, and
stoop. (R. at 119, 121) Dr. Hanna further found that Plaintiff
should avoid concentrated exposure to extreme cold and hazards such as
machinery and/or heights. (R. at 123) On reconsideration, Amir
Missaghian, M.D., after reviewing the record, indicated that "there is
no change in RFC[.]" (R. at 126; see also R. at 152)

7

Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 7.  According to Plaintiff, "[t]he **sole** reason the ALJ provided for his decision to discredit this expert opinion was that the State agency non-examining doctor had not heard [the ME's] testimony."  Id. at 6.  However, as Plaintiff notes, the ME who testified at the hearing was a psychiatrist, not an expert in back disorders.  See id. at 7.  Moreover, Plaintiff continues, even if the ME were qualified to testify as to Plaintiff's physical RFC, the ME did not so testify.  See id.  The Court is constrained to agree that the ALJ's RFC finding is unsupported by substantial evidence.

First and foremost, having discounted the only RFC assessments in the record, the ALJ was left with no medical guidance to support his RFC assessment.  There are no RFC assessments from treating or examining physicians.[9]  Apparently Plaintiff's lawyer requested completion of medical information, including an RFC assessment, for disability determination by a primary care physician, but such form was not completed.  (R. at 575)  According to the entry in the record, "physical capacity evaluation form could not be completed as it is not done in clinic setting ... a note was made stating that it is difficult to asses[s] disability as [Plaintiff] was seen by [Khaja N.

---

[9] The record contains a notation from Norman Kornwitz, M.D., of West Bay Orthopedic Associates, Inc., dated December 21, 2000, that Plaintiff, after suffering an injury to his lower back at work, could return to "[l]imited duty; no lifting >30 lbs."  (R. at 83)  The ALJ afforded "less weight to Dr. Kornwitz' '30 lbs.' lifting restriction since this would have certainly been expected to improve if the claimant had actually undergone the recommended 'work hardening' program at that time."  (R. at 18 n.4)  The Court notes that Dr. Kornwitz did not complete a full RFC assessment and that, in any event, the notation cited above predates Plaintiff's alleged onset date of January 15, 2001, (R. at 15, 75).  The Court further notes that Dr. Kornwitz' restriction on lifting no more than thirty pounds is more consistent with the DDS doctors' finding that Plaintiff was capable of performing light work than with the ALJ's finding of an RFC for a full range of medium work.

Ahmed, M.D.[10]] only once on 3/10/06." (R. at 575); see also (R. at 571-72). Dr. Ahmed indicated that a letter and completed form were sent on November 2, 2006, (R. at 572), the same date the above notation was made, (R. at 575). However, as stated above, no RFC from Dr. Ahmed or any other treating physician appears in the record. See Rivera-Figueroa v. Sec'y of Health & Human Servs., 858 F.2d 48, 52 (1st Cir. 1988)("Absent a residual functional capacity assessment from an examining psychiatrist, we do not think the ALJ was equipped to conclude that claimant's condition was so trivial as to impose no significant limitation on ability to work.")(citing Burgos Lopez v. Sec'y of Health & Human Servs., 747 F.2d 37, 41-42 (1st Cir. 1984)); see also Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990)("[W]e have held—and we reiterate—that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record. This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment.")(internal citations omitted). While in the instant case the ALJ did find Plaintiff's lumbar

---

[10] Mel Anderson, M.D., appears to have been Plaintiff's first primary care physician ("PCP") at the Providence Veterans Administration Medical Center. (R. at 277) J. Michael O'Connell, M.D., succeeded Dr. Anderson as Plaintiff's PCP sometime in the summer of 2005. (R. at 497-504) On March 10, 2006, however, Plaintiff "apparently request[ed] to be seen todayby another phsycician [sic] as he could not comply with the recommendations of hi[s] PC[P]." (R. at 569-70)

degenerative disc disease to be a severe impairment,[11] (R. at 15, 20), the ALJ was not qualified to assess Plaintiff's residual functional capacity absent some medical guidance, see Gordils, 921 F.2d at 329.

------------

[11] This finding is supported by MRIs dated January 26, 2001, October 14, 2001, and September 8, 2004. (R. at 96, 103, 305) The report of the January 26, 2001, MRI states that the "[s]tudy shows disc dehydration at L4-5 and L5-S1. There are small disc hernias present at both levels. Both hernias are situated centrally and both indent the dural sac. No particular lateralization to either side is seen. No severe canal or foraminal compromise is noted." (R. at 96) The October 14, 2001, MRI indicated:

> L4-5 and L5-S1 disc degeneration with a small to moderate size disc hernia at L4-5 centrally and to the left of midline indenting the dural sac. The L4-5 disc herniation was present on previous MR study on 1/26/01 and looks slightly worse since that time. No new abnormality at L5-S1 or any other level is seen.

(R. at 103); see also (R. at 309). According to the September 8, 2004, MRI report:

> L5 to S1: There is a mild broad-based disc bulge with superimposed small central disc protrusion. The disc protrusion does not contact the neural elements. No significant facet arthropathy. The central canal and the subarticular recess are widely patent. The neural foramina are mildly stenotic on the left and minimally stenotic on the right.
>
> At L4 to L5, there is a broad-based disc bulge with superimposed annular tear and small central disc protrusion. No significant facet arthropathy. The central canal and subarticular recess are widely patent. The neural foramina are widely patent.
>
> At L3 to L4, L2 to L3, L1 to L2, and T12 to L1, the discs are normal. The central canal and the neural foramina are widely patent.
>
> The remainder of the structures about the lumbar spine are unremarkable.

(R. at 306) The report concludes: "Mild lower lumbar spondylosis confined to L4-5 and L5-S1 as described above. No evidence of compression of neural elements." (Id.)

Second, the ALJ's reasons for affording little or no weight to the opinions of the DDS doctors cannot constitute substantial evidence.  The ALJ discounted their opinions because they had not heard the testimony of the ME.  (R. at 19 n.5)  However, the ME in the instant matter was a psychiatrist, (R. at 620), who was asked to testify "from a psychiatric point of view ...," (R. at 625); see also Hearings, Appeals and Litigation Law Manual ("HALLEX") § 1-2-5-39 at 1 ("An ALJ must not question an ME about any matter which is not within the ME's area of expertise and responsibility.").  He was not asked about Plaintiff's physical capabilities, and he expressed no opinion about Plaintiff's physical capabilities.  (R. at 620-30)

Moreover, the ALJ's statement that "[i]t is obvious that the opinions of non-examining physicians are entitled to only limited weight under the Regulations," (R. at 19 n.5), is contrary to First Circuit law, the very regulations cited by the ALJ, and Social Security Rulings.  The First Circuit has recognized that the assessment of a non-examining medical expert may, in some circumstances, constitute substantial evidence.  See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)(citing Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)(affirming the Secretary's adoption of the findings of a non-testifying, non-examining physician and permitting those findings to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability)); see also Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988)("It is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner].");  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A.)("In appropriate circumstances, opinions from State agency medical and psychological consultants and other

program physicians and psychologists may be entitled to greater
weight than the opinions of treating or examining sources.”).
“State agency medical and psychological consultants and other
program physicians and psychologists are highly qualified
physicians and psychologists who are also experts in Social
Security disability evaluation.”  20 C.F.R. § 404.1527(f)(2)(i)
(2009); see also SSR 96-6p, 1996 WL 374180, at *2 (“State agency
medical and psychological consultants are highly qualified
physicians and psychologists who are experts in the evaluation of
the medical issues in disability claims under the Act.”).  Here,
the DDS doctors were in agreement that Plaintiff was capable of
performing work at the light exertional level with certain
postural and environmental restrictions.  (R. at 118-27, 152);
see also DiVirgilio v. Apfel, 21 F.Supp.2d 76, 81 (D. Mass. 1998)
(noting that “broad agreement” between advisory opinions was a
“level of agreement sufficient for [them] to be considered
substantial evidence”).

Although the ALJ had ample reason to find Plaintiff less
than credible, (R. at 19, 20), and to doubt his claim that his
lower back pain left him so incapacitated that he spent ninety-
nine per cent of his time in his recliner or on his couch, (R. at
194, 608), the Court cannot ignore the fact that the ALJ’s
determination that Plaintiff retained the RFC to perform medium
work is unsupported by substantial evidence.  If the question
presented by this case were whether substantial evidence
supported a finding that Plaintiff was capable of performing
light work, the Court would have no difficulty affirming such a
finding.  However, the question presented is whether substantial
evidence supports the ALJ’s finding that Plaintiff retained the
RFC to perform a full range of medium work.  The Court is
compelled to answer that question in the negative for three
reasons.  First, no medical source found that Plaintiff retained

the RFC to perform work at the medium exertional level.  Second, the ALJ rejected the only RFC assessments in the record (which found Plaintiff capable of performing light work).  Third, the source upon whom the ALJ relied, the ME, is a psychiatrist who was asked to testify "[f]rom a psychiatric point of view ...," (R. at 625), and offered no opinion as to Plaintiff's RFC.  In the circumstances of this case, therefore, the Court finds that the ALJ "overstep[ped] the bounds of a lay person's competence and render[ed] a medical judgment."  Gordils v. Sec'y of Health & Human Servs., 921 F.2d at 329.  Accordingly, I recommend that the matter be remanded for further administrative proceedings, specifically reassessment of Plaintiff's RFC.

II.  **The ALJ's finding that Plaintiff experienced no nonexertional limitations is not supported by substantial evidence in the record.**

The ALJ also found that Plaintiff had no nonexertional limitations.  (R. at 19, 20)  The ALJ stated that:

> Although some of the claimant's treating and examining
> sources have noted diagnoses of depression, panic
> disorder[,] and anxiety with GAF's[12] between "50" and
> "55" (consistent with "moderate" to "serious" symptoms),
> the medical expert, Dr. Ruggiano[,] testified that the
> only mental diagnosis supported by the medical record was
> "narcotic addiction[.]"   On the other hand, the
> claimant's substance addiction disorder[,] which has not
> been even diagnosed in the medical evidence of record
> aside from the medical expert testimony has clearly not
> caused any significant secondary functional limitations.
> The undersigned affords less weight to the State Agency

---

[12] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM-IV-TR at 34.

consultants who noted that the claimant's affective disorder, anxiety disorder[,] and substance addiction disorder caused "moderate ..." limitations[13] since the State Agency consultants did not consider the testimony of the medical expert, Dr. Ruggiano, at the hearing.

(R. at 15-16 n.2)(internal citations omitted).

Plaintiff challenges the ALJ's finding of no nonexertional limitations for essentially the same reason he objected to the ALJ's RFC assessment.  See Plaintiff's Mem. at 8.  Although on this issue it is a much closer question, the Court again concludes that the ALJ's determination is unsupported by substantial evidence.

As already noted, the ALJ afforded little or no weight to the opinions of the DDS consultants.  See Discussion section I supra at 10-12.  Having discounted the only mental RFC assessments in the record, the ALJ was left with only the ME's

---

[13] Michael Slavit, Ph.D., found at the initial level that Plaintiff was not significantly limited in his ability to remember work locations and work-like procedures, understand, remember, and carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation; moderately limited in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others; and markedly limited in no area.  (R. at 146-47)  On reconsideration, Joseph Litchman, Ph.D., after reviewing the record, affirmed Dr. Slavit's mental RFC assessment "as written[.]" (R. at 148); see also (R. at 144, 151).

14

testimony on which to base his finding of no nonexertional
limitations.  However, the ME's testimony did not include a
quantified assessment of Plaintiff's limitations.  See
Plaintiff's Mem. at 8; see also (R. at 620-30).  In fact, there
is no testimony whatsoever regarding functional limitations,
exertional or nonexertional.  (R. at 620-30)  Accordingly, I
recommend remand for further administrative proceedings,
specifically a determination of what, if any, nonexertional
limitations Plaintiff has.

## III. Substantial evidence supports the ALJ's finding of narcotic addiction.

Plaintiff asserts that the ALJ's finding of narcotic
addiction and medication-seeking behavior is not supported by
substantial evidence in the record.  See Plaintiff's Mem. at 9.
According to Plaintiff, "the only specific evidence to support a
finding of narcotic addi[c]tion is a note from Yogish D. Kamath,
M.D., an attending neurosurgeon."  Id. at 11.  Plaintiff is
mistaken.

There is abundant evidence to support the ALJ's
determination that Plaintiff was addicted to narcotics and/or
engaged in drug-seeking behavior.  First, the ME testified that
the only psychiatric diagnosis which emerged from the record was
narcotic addiction, (R. at 625), and noted two instances in the
record where Plaintiff demanded more narcotic medication than was
needed, (id.).  Second, as acknowledged by Plaintiff, see
Plaintiff's Mem. at 11, Dr. Kamath indicated on September 8,
2004, that "[h]e insists on getting vicodyns today.  I have not
given him any narcotics," (R. at 317).  Third, there is other
evidence in the record which supports the ALJ's determination.
For example, on March 20, 2001, Norman Kornwitz, M.D., indicated
that "[t]he patient is fairly insistent that he still needs
Vicodin.  I told him he has been tapered off, and it would be in

15

his best interest to discontinue narcotics." (R. at 579) On
October 28, 2002, Ann Nicole Normand, M.D., recorded that:

> [Plaintiff] is quite adamant about being given a shot of
> narcotics or a shot of Cortisone directly into his spine
> today in Clinic, and I explained to him that both of
> these are inappropriate. I explained to him that we
> should keep him on the pain control regimen that his
> Primary Care physician has, although I would be happy to
> write him [a prescription] for a nonsteroidal anti-
> inflammatory drug if he wished. He refused NSAIDs,
> stating "those don't work." He said that he may go to
> Urgent Care for pain medication "if you won't give it to
> me."

(R. at 322) Kerry Gill DeLuca, M.D., observed on July 20, 2001,
that while Plaintiff "present[ed] for his appointment walking
briskly without apparent pain behaviors," (R. at 110), and
"appear[ed] comfortable and in no distress," (id.), "[a]fter
discussing referral for vocational services and pain psychology,
the patient demonstrate[d] pain behaviors including position
change from sitting to standing, squatting during the
examination, and stopping the examination due to pain," (id.).
On September 8, 2004, Roy N. Alcalay, M.D., indicated that
Plaintiff's "gait (when unnoticed) is normal and stable." (R. at
315) In an addendum to Dr. Alcalay's report dated October 1,
2004, Dr. Kamath noted that "[Plaintiff] keeps asking for
narcotics (vicodyn). Review of records reveals that he has asked
for narcotics at his clinic visits in the past," (R. at 316);
that, based on Plaintiff's presentation, the doctor "suspect[ed]
a significant functional component to his symptoms as well," (R.
at 317); and that "[f]unctional component/motives for secondary
gains can not be excluded, given the minimal disease seen on MRI
and the disproportionate clinical symptoms ...," (R. at 316). On
August 30, 2005, Claire Bourgault, R.N., reported a phone
conversation with Wendy Belmore, a nurse at the West Haven pain
clinic, where Plaintiff had received epidural steroid injections.

(R. at 502)   According to Nurse Bourgault:

> Apparently 2 days ago the patient called [Nurse Belmore]
> stating that he could not move, he couldn't think, and he
> wanted her to send him some pain medication.   Apparently
> he has been pretty persistent.   She said that there is no
> way that she would order anything for a patient without
> his being seen.

(Id.)   J. Michael O'Connell, M.D., observed on December 5, 2005,
that Plaintiff was

> [o]verdue for [follow-up]- last seen 9/7, and was to
> [follow-up] in a month- cancelled app[ointment] 11/10,
> and states he couldn't come in sooner "[because] you
> didn't have any afternoon app[ointments]."   Odd affect,
> inappropriately laughing at times despite claim of 7/10
> pain.   Due to the fact that he didn't follow up as
> advised, his upward taper on paxil was continued, as was
> the downward taper of klonopin. ...   However, he states
> he did not increase his paxil "[because] I still had
> pills."   I note that the paxil and klonopin were
> [prescribed] on the same day, and his story is quite
> inconsistent.

(R. at 487); see also (R. at 494).   Dr. O'Connell also opined
that "I am suspicious about his inconsistency regarding
[prescriptions] paxil and klonopin."   (R. at 488)   Dr. O'Connell,
in an addendum dated February 27, 2006, stated that Plaintiff had
been "referred to mental health as advised at 12/05 visit.   I
will [prescribe] a 30 day supply of klonopin to hold him until he
can see mental health, but I will not renew it beyond that."   (R.
at 479); see also (R. at 484)   Dr. O'Connell additionally noted
that Plaintiff "is noted to have cancelled or no-showed to mental
health- his decision.   I stand by my decision not to renew
klonopin."   (R. at 479)

Based on the foregoing, the Court concludes that there was
ample evidence on which the ALJ could base a finding of narcotic
addiction and/or drug-seeking behavior.   Accordingly, I do not
recommend remand on this issue.

**IV.  The ALJ's failure to comply with SSR 00-4p is harmless error.**

Plaintiff argues that "the ALJ did not inquire about the [Dictionary of Occupational Titles ("DOT")].  This was legal and factual error.  Substantial evidence therefore cannot support the ALJ's finding that [Plaintiff] can perform his past relevant work."  Plaintiff's Mem. at 13 (internal citations omitted).  Plaintiff neither asked any questions of the VE at the hearing, (R. at 634), nor does Plaintiff now challenge the VE's classification of Plaintiff's past relevant work as medium exertional level, skilled work, see Plaintiff's Mem. at 13.  Thus, Plaintiff seeks remand solely on the technicality of the ALJ's failure to ask the VE whether his testimony was consistent with the DOT.  See Mitchell v. Astrue, No. CA 07-229 ML, 2009 WL 50171, at *11 (D.R.I. Jan. 7, 2009).

Some courts have interpreted SSR 00-4p as requiring an ALJ to inquire only when a conflict between VE testimony and the DOT has been identified, while others have concluded that the ALJ is required to ask the VE whether any possible conflict exists.  Compare Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) (stating that SSR 00-4p "requires the ALJ to '[e]xplain [in the] determination or decision how any conflict [with the Dictionary] that has been identified was resolved.'")(quoting SSR 00-4p) (alterations in original), with Burns v. Barnhart, 312 F.3d 113, 127 (3rd Cir. 2002)(stating that SSR 00-4p "requires that the ALJ ask the vocational expert whether any possible conflict exists between the vocational expert's testimony and the DOT, and that, if the testimony does appear to conflict with the DOT, to elicit a reasonable explanation for the apparent conflict.")(internal quotation marks omitted).  The First Circuit has not definitively ruled that an ALJ must always ask the VE about any possible conflicts or that a reviewing court must remand if an ALJ fails

18

to do so.  See, e.g., Freeman v. Barnhart, 274 F.3d 606, 609 (1st
Cir. 2001)(remanding, in part, for compliance "with a new Social
Security Ruling clarifying the ALJ's duty to resolve any
conflicts between the vocational expert's testimony and the
definitions in the Dictionary of Occupational Titles," at the
Commissioner's request, without discussing the circumstances
under which such remand is required).  However, other courts
within the First Circuit have held that "the mere failure to ask
such a question cannot by itself require remand; such an exercise
would be an empty one if the [VE's] testimony were in fact
consistent with the DOT.  Only an inconsistency between the
testimony and the DOT that affects a plaintiff's claim could
reasonably provide the basis for overturning the [C]ommissioner's
decision ...." Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL
1529264, at *2 (D. Me. June 24, 2004); see also Giles v.
Barnhart, No. 06-28-B-W, 2006 WL 2827654, at *3 (D. Me. Sept. 29,
3006)(holding that ALJ's failure to make inquiry under SSR 00-4p
was harmless error); Wilcox v. Barnhart, No. Civ. 03-408-PB, 2004
WL 1733447, at *5 (D.N.H. July 28, 2004)(finding persuasive logic
in Hodgson, 2009 WL 1529264, at *2).

This Court has reached the same conclusion.  See Senay v.
Astrue, C.A. No. 06-548S, 2009 WL 229953, at *11 (D.R.I. Jan. 30,
2009)(holding that, because no conflict was apparent, ALJ's
failure to ask VE about possible conflicts between his testimony
and DOT was harmless error); Mitchell, 2009 WL 50171, at *11
(holding that "[s]ince Plaintiff has not argued or identified any
such inconsistency, her argument is purely technical and
constitutes, at worst, harmless error.").  Thus, even assuming
that the ALJ's failure to ask the VE about possible conflicts
between his testimony and the DOT was error, the Court finds such
error to be harmless.  See Doucette v. Barnhart, No. 04-89-P-S,
2004 WL 2862174, at *5 (D. Me. Dec. 13, 2004)("In any event, the

failure to ask such a question is harmless if there is in fact no conflict that could affect the outcome of the plaintiff's claim."); see also Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999)(noting that remand is not essential "if remand will amount to no more than an empty exercise")(internal citations omitted); Fisher v. Bowen, 869 F.2d at 1057 (noting that remand is not required "unless there is reason to believe that the remand might lead to a different result"). Accordingly, I do not recommend remand on this issue.

### Summary

The ALJ's findings that Plaintiff was capable of performing a full range of medium work and had no nonexertional limitations are not supported by substantial evidence in the record. The ALJ's determination that Plaintiff was addicted to narcotics and/or engaged in drug-seeking behavior is supported by substantial evidence. Finally, the ALJ's failure to inquire whether the VE's testimony was consistent with the DOT, if error, is harmless error.

### Conclusion

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act, as amended, is unsupported by substantial evidence in the record. Accordingly, I recommend that Plaintiff's Motion to Reverse be granted to the extent that the matter be remanded for further administrative proceedings consistent with this opinion and that Defendant's Motion to Affirm be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See

<u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
November 24, 2009